IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WENDY WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:15-CV-705-MHT |
| | ) | [WO] |
| DR. DAVID GAMS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### **RECOMMENDATION OF THE MAGISTRATE JUDGE**

This 42 U.S.C. § 1983 action for damages involves a dispute over the adequacy of medical care and treatment afforded to Plaintiff Wendy Williams during her incarceration at the Julia Tutwiler Prison for Woman in Wetumpka, Alabama.[1] Williams names as defendants Dr. David Gams, Nurse Chappell, Corizon, Nurse Blount (collectively "the Medical Defendants"), and Wardens Bobby Barrett and Gwendolyn Tarrance (collectively "the Correctional Defendants").[2]

Defendants filed answers, special reports, a supplemental special report, and supporting evidentiary materials addressing Williams' claims for relief. In these documents, Defendants deny that they acted in violation of Williams' constitutional rights. The Medical Defendants also assert in their supplemental special report that the complaint is due to be dismissed because Williams failed to exhaust an administrative remedy

---

[1] Williams was released from custody during the pendency of this action.
[2] In accordance with the prior proceedings and orders entered by the court, Williams' complaint against Commissioner Jefferson Dunn and the Alabama Department of Corrections has been dismissed. *See* Docs. 16, 28 & 29.

available to her through the prison system's medical care provider. Docs. 23 & 77-1. The Medical Defendants base their exhaustion defense on Williams' failure to submit any medical grievances or grievance appeals regarding her claims. Doc. 77-1. In addition, the Medical Defendants maintain, and the evidentiary materials—including Williams' medical records—indicate that she received appropriate medical treatment during the time relevant to the matters alleged in the complaint. *See* Docs. 35, 35-1, 35-2, 35-3 & 35-4.

The court granted Williams an opportunity to file a response to Defendants' reports, advising her to, among other things, "specifically address the Medical Defendants' argument that she [] failed to exhaust her available administrative remedies as required by 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA")." Doc. 78 at 1 (footnote omitted). The order advised Williams that her response should be supported by affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 78 at 2–3. The order further cautioned Williams that unless "sufficient legal cause" is shown within ten days of entry of this order "why such action should not be undertaken, . . . the court may at any time [after expiration of the time for her filing a response to this order] and without further notice to the parties (1) treat the special reports and supplemental special report and any supporting evidentiary materials as a motion for summary judgment or motion to dismiss, whichever is appropriate and (2) after considering any response as allowed by this order, rule on the motion in accordance with law." Doc. 78 at 3–4. Williams filed responses to Defendants' special reports. *See* Docs. 62, 63, 65 & 68. She has not, however, filed a response to the Medical Defendants' supplemental special report within the time allowed by the court.

2

The court will treat the Medical Defendants' special report, as supplemented, as a motion to dismiss regarding the exhaustion defense and resolve this motion in the Medical Defendants' favor. *Bryant v. Rich*, 530 F.3d 1368, 1374–75 (11th Cir. 2008) ("[A]n exhaustion defense . . . is not ordinarily the proper subject for a summary judgment [motion]; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."); *see also Trias v. Fla. Dept. of Corrs.*, 587 F. App'x 531, 534 (11th Cir. 2014) (holding that the district court properly construed a defendant's "motion for summary judgment as a motion to dismiss for failure to exhaust administrative remedies"). In addition, the court will treat the Correctional Defendants' report as a motion for summary judgment and resolve this motion in their favor.

### I. STANDARD OF REVIEW

**A.   Exhaustion**

In addressing the requirements of 42 U.S.C. § 1997e exhaustion, the Eleventh Circuit has

> recognized that [t]he plain language of th[is] statute makes exhaustion a precondition to filing an action in federal court. This means that until such administrative remedies as are available are exhausted, a prisoner is precluded from filing suit in federal court.

*Leal v. Ga. Dept. of Corrs.*, 254 F.3d 1276, 1279 (11th Cir. 2001) (citations and internal quotations omitted). Furthermore, "the question of exhaustion under the PLRA [is] a 'threshold matter' that [federal courts must] address before considering the merits of the case," and that cannot be waived. *Myles v. Miami-Dade Cnty. Corr. & Rehab. Dept.*, 476 F. App'x 364, 366 (11th Cir. 2012) (quoting *Chandler v. Crosby*, 379 F.3d 1278, 1286

(11th Cir. 2004)).

> When deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the plaintiff's version of the facts as true. If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. If the complaint is not subject to dismissal at this step, then the court should make specific findings in order to resolve the disputed factual issues related to exhaustion.

*Myles*, 476 F. App'x at 366 (citations and internal quotations omitted). Consequently, a district court "may resolve disputed factual issues where necessary to the disposition of a motion to dismiss for failure to exhaust [without a hearing]. The judge properly may consider facts outside of the pleadings to resolve a factual dispute as to exhaustion where doing so does not decide the merits, and the parties have a sufficient opportunity to develop the record." *Trias*, 587 F. App'x at 535. Based on the foregoing, the Eleventh Circuit has rejected an inmate-plaintiff's argument that "disputed facts as to exhaustion should be decided" only after a trial either before a jury or judge. *Id*. at 534.

**B.    Summary Judgment**

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its

motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating that there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324.

The Correctional Defendants have met their evidentiary burden. Thus, the burden shifts to Williams to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to her case exists. *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery v. Sarasota White Sox, Inc*., 64 F.3d 590, 593–94 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact) (internal quotations omitted). This court will also consider "specific facts" pleaded in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable factfinder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Educ*., 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the non-moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a

*pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Williams' *pro se* status alone does not compel the court to disregard elementary principles of production and proof in a civil case.

## II. DISCUSSION

A.  **The Medical Defendants**

Williams challenges the adequacy of medical care received at the Julia Tutwiler Prison for Women in November 2014 for issues regarding her ears. Doc. 7.  In response to the complaint, the Medical Defendants deny that they provided Williams with constitutionally inadequate medical care and argue that this case is subject to dismissal because she did not properly exhaust an administrative remedy provided by the institutional medical care provider prior to filing this complaint, as required by the PLRA. Docs. 23 & 77-1.  As explained above, federal law directs this court to treat the Medical Defendants' response as a motion to dismiss for failure to exhaust an administrative remedy and allows the court to look beyond the pleadings to relevant evidentiary materials in deciding the issue of exhaustion. *Bryant*, 530 F.3d at 1375.

The PLRA compels exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint.  Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective

of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998); *Woodford v. Ngo*, 548 U.S. 81 (2006). Moreover, "the PLRA exhaustion requirement requires proper exhaustion," which

> demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings. . . . Construing § 1997e(a) to require proper exhaustion . . . fits with the general scheme of the PLRA, whereas [a contrary] interpretation would turn that provision into a largely useless appendage.

*Woodford*, 548 U.S. at 90–93. The Supreme Court has reasoned that an inmate cannot satisfy the PLRA's "exhaustion requirement . . . by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to him." *Id.* at 83–84; *Bryant*, 530 F.3d at 1378 (holding that prisoners must "properly take each step within the administrative process" to exhaust administrative remedies in accordance with the PLRA); *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (holding that an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion

7

requirement of the PLRA); *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (holding that inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." *Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012).

The record is undisputed that the health care provider for the Alabama Department of Corrections provides a grievance procedure for inmate complaints related to the provision of medical treatment. Doc. 77-1. The Medical Defendants submitted evidence reflecting that inmates are educated about the availability of the medical grievance process when they are processed into the custody of the Alabama Department of Corrections. Doc. 77-1. Inmate grievance forms are available to inmates at Tutwiler to submit a grievance related to the provision of health care. Health staff collects submitted grievance forms each day from locked collection boxes located throughout the population areas of Tutwiler,[3] inmate grievances are reviewed within five business days of receipt of the grievance by the Health Services Administrator ("HAS") or the HSA's designee, and a written response is prepared unless a face-to-face encounter is necessary prior to providing a written response. Doc. 77-1. The inmate grievance form provides information about how an inmate may appeal the response she receives to her initial inmate grievance. Doc. 77-1. A written response to a formal grievance appeal is provided in approximately five days of receipt. Doc. 77-1. Inmates are provided with a copy of the completed grievance and grievance

---

[3] Nurses also visit single cell areas of Tutwiler every day and collect grievances submitted by inmates housed in the single cell areas while on rounds. Doc. 77-1.

8

appeal containing the HSA's response. Doc. 77-1. If an inmate is not satisfied with the HSA's response to the grievance appeal, a face-to-face encounter with the HSA or Warden may be conducted. Doc. 77-1. Grievances and grievance appeals are appropriately annotated in both the grievance and grievance appeal logs. Doc. 77-1. Even though these procedures were available to her, Defendants argue that Williams failed to exhaust the available grievance procedure regarding the medical issues raised in her complaint. Specifically, the Medical Defendants state that Williams filed five grievances during her incarceration at Tutwiler but only one concerned issues related to her ear. Doc. 77-1 at 11–15. Nurse Chappell responded to that grievance, and Williams did not file a grievance appeal from Nurse Chappell's response. Doc. 77-1 at 4.

The court granted Williams an opportunity to respond to the exhaustion defense raised by the Medical Defendants in their motion to dismiss, but Williams failed to do so. Without any stated opposition, and on the record before it, the court finds that Williams had an available grievance system at Tutwiler that she failed to exhaust. Williams does not dispute her failure to exhaust the grievance procedure regarding the provision of medical care at Tutwiler, and the unrefuted record before the court demonstrates that she has not satisfied this precondition to proceeding in this court on her claims. The Medical Defendants' motion to dismiss for failure to exhaust is therefore due to be granted. *Woodford*, 548 U.S. at 87–94.

Moreover, Williams is no longer incarcerated. The institutional administrative remedy procedure is, therefore, no longer available to her. Under these circumstances, dismissal with prejudice is appropriate. *Bryant*, 530 F.3d at 1375 n.1; *Johnson*, 418 F.3d at

1157; *Berry v. Keirk*, 366 F.3d 85, 88 (2d Cir. 2004) (finding an inmate's federal lawsuits were properly dismissed with prejudice where previously available administrative remedies had become unavailable and no circumstances justified the failure to exhaust).

B.   **The Correctional Defendants**

    *1.   Absolute Immunity*

To the extent the alleged constitutional violations Williams lodges against the Correctional Defendants are made against them in their official capacities, they are entitled to absolute immunity from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, or Congress has abrogated the state's immunity. Alabama has not waived its Eleventh Amendment immunity, and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997) (citations omitted).

In light of the foregoing, it is clear that Defendants Barrett and Tarrance are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacity. *Id.*; *Jackson v. Ga. Dept. of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).

    *2.   Negligence Claim*

Plaintiff alleges that the Correctional Defendants exhibited negligence by failing to ensure that she received appropriate medical care after she complained about ear pain. The

Constitution, however, is not implicated by negligent acts of an official causing unintended loss of life, liberty, or property. *Daniels v. Williams*, 474 U.S. 327 (1986).  Here, Williams' contention that the Correctional Defendants acted negligently at worst shows only a lack of due care by prison officials that is not actionable under 42 U.S.C. § 1983.  The protections of the Constitution "are just not triggered by lack of due care by prison officials." *Davidson v. Cannon*, 474 U.S. 344, 348 (1986); *Daniels*, 474 U.S. at 333; *see also Whitley v. Albers*, 475 U.S. at 319 (holding that a violation of the Eighth Amendment must involve "more than an ordinary lack of due care for the prisoner's . . . . safety"). Because negligent conduct does not rise to the level of a constitutional violation, the Correctional Defendants are due to be granted summary judgment on this claim.

       3.     *Deliberate Indifference Claim*

Williams contends that the Correctional Defendants failed to provide her with adequate or reasonable healthcare for problems associated with an infected ear.  The Correctional Defendants maintain that Williams did not report this condition or otherwise make them aware of any medical concern she had regarding a problem with her ear. Docs. 43-2 & 43-3.  While Williams maintains that she sent complaints about her hearing issues to Warden Tarrance (Doc. 65-1), the Correctional Defendants affirm that any medical complaints reported to them by Williams merely would have resulted in a referral for her to seek medical care from the prison medical providers because the Correctional Defendants are not medical professionals and rely on the training and experience of medical staff regarding an inmate's medical care. Docs. 43-2 & 43-3.

Williams presents no evidence sufficient to create a genuine issue of disputed fact

regarding the claim that Defendants Barrett and Tarrance acted with deliberate indifference to her medical needs. The record makes clear that the Correctional Defendants are not health care professionals and do not make decisions regarding inmate medical care and treatment. There is no evidence that the Correctional Defendants attempted to intercede, overrule, or influence decisions made by medical personnel regarding Williams' medical care. There is nothing before the court which indicates these defendants personally participated in or had any direct involvement with the medical treatment provided to Williams.

Instead, the undisputed evidentiary materials demonstrate that medical personnel made all decisions relative to the course of treatment provided to Williams. Docs. 35-1 to -4. The law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff, or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. *See Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004) (holding that, absent a reason to believe or actual knowledge that medical staff is administering inadequate medical care, non-medical prison personnel are not chargeable with the Eighth Amendment scienter requirement of deliberate indifference); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (holding that a supervisory official is liable only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions . . . and the alleged constitutional deprivation"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996) (holding that "a prisoner may not attribute any of his constitutional claims to higher officials by the doctrine of *respondeat superior*;

the official must actually have participated in the constitutional wrongdoing") (internal quotations omitted); *Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (holding that a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment).

The record is devoid of evidence that the Correctional Defendants knew of specific facts from which an inference could be drawn that a substantial risk of harm existed to Williams, or that they actually drew this inference and ignored the risk. Williams has, therefore, failed to establish the requisite element of subjective awareness by the Correctional Defendants. *See Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003). Summary judgment is due to be granted in favor of Defendants Barrett and Tarrance on Williams' deliberate indifference claim.

### 4. *Disciplinary Claim*

Williams maintains that she received disciplinary infractions because medical personnel "put[] the police officers on [her]" for seeking information about her health. Doc. 1 at 7. Regarding a disciplinary action she received in October 2014 for failing to obey a direct order, Williams maintains that her hearing problem caused her to be unable to hear the command given to her by a correctional officer, presumably negating her culpability for the challenged conduct.[4] Doc. 1-4 at 4. Williams further contends that Defendant Tarrance failed to investigate the conduct charged against her and simply signed off on the

---

[4] According to Williams' testimony at the disciplinary hearing, however, "Marie said it is last call for feeding. He did not give a direct order for counting. So, we left out the dorm for feeding. The Officers on south hall stopped us for Mr. Clay." Doc. 43-4 at 6.

disciplinary reports. *See* Doc. 65-1.

Williams' inmate file reflects that she received three disciplinary infraction reports at Tutwiler. On August 13, 2014, Correctional Officer Napoleon Goodson issued Williams a disciplinary for lying in violation of Rule 313. On October 11, 2014, Correctional Officer Clay Edward issued Williams a disciplinary for failure to obey a direct order of an ADOC employee in violation of Rule 925. On June 9, 2015, Correctional Officer Majkeida Thomas issued Williams a disciplinary for a violation of institutional rules as prohibited by Rule 309. Following hearings on these disciplinary charges, Williams was found guilty of each charge and sanctioned for each disciplinary infraction with a loss of privileges and a loss of good time. Doc. 43-4 at 5–8.

Williams' claims for damages based on the validity of the disciplinary action taken against her at Tutwiler are barred from review because success on these claims would invalidate the disciplinary infractions imposed on her and the loss of good time associated with the disciplinary action. *See Heck v. Humphrey,* 412 U.S. 477 (1994); *Edwards v. Balisok,* 520 U.S. 641 (1997); *Richards v. Dickens*, 411 F. App'x 276 (11th Cir. 2011). A claim challenging unlawful conduct leading to an unconstitutional conviction, including administrative action while in prison, cannot proceed unless the inmate plaintiff shows that the challenged conviction was reversed, expunged or otherwise invalidated, as required by the *Heck* standard:

> [I]n order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make

> such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck*, 512 U.S. at 486–87. The United States Supreme Court has applied the *Heck* analysis to actions brought by prisoners who are challenging disciplinary proceedings. *See Edwards*, 520 U.S. at 643–49; *Roberts v. Wilson*, 259 F. App'x 226, 229 (11th Cir. 2007) (affirming dismissal under 28 U.S.C. § 1915(e)(B)(2)(ii) of an action pursuant to *Heck* where plaintiff alleged deprivations of his due process rights during a disciplinary hearing but never had the disciplinary adjudication invalidated).

Williams challenges the validity of the disciplinary reports described above as a violation of her due process rights by claiming essentially that the evidence was insufficient to support the charges lodged against her. A judgment in favor of Williams on her claims will necessarily imply the invalidity of the disciplinary judgments entered against her that resulted in the loss of good time. The pleadings filed by the parties establish that the challenged disciplinary judgments have not been expunged or invalidated in an appropriate proceeding. "Absent expungement or invalidation of [the] disciplinary actions, [Williams'] claims are barred by *Heck*." *Richards*, 411 F. App'x at 278. The Correctional Defendants are, therefore, entitled to summary judgment on this claim.

### 5. *State-Law Claims*

To the extent Williams' complaint implicates claims arising under state tort law, the

court is only empowered to hear these claims upon the exercise of the court's supplemental jurisdiction. In the posture of this case, however, exercising supplemental jurisdiction is inappropriate.

For a federal court "[t]o exercise [supplemental] jurisdiction over state law claims not otherwise cognizable in federal court, the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a common nucleus of operative fact." *L.A. Draper & Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984) (internal quotation marks and citations omitted). The exercise of supplemental jurisdiction is discretionary. *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims." *L.A. Draper*, 735 F.2d at 428. In view of this court's resolution of the federal claims presented in the complaint, Williams' supplemental state-law tort claims are due to be dismissed. *Gibbs*, 383 U.S. at 726 (holding that where the federal claims are dismissed prior to trial the state claims also should be dismissed).

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The Medical Defendants' motion to dismiss (Docs. 35 & 77) be GRANTED to the extent these defendants seek dismissal of this case due to Plaintiff's failure to exhaust an administrative remedy available to her prior to initiating this cause of action;

2. This case against Defendants Gams, Chappell, Corizon, and Blount be DISMISSED with prejudice in accordance with the provisions of 42 U.S.C. § 1997e(a) for Plaintiff's failure to exhaust an administrative remedy before seeking relief from this court.

3. The Correctional Defendants' motion for summary judgment (Doc. 43) be GRANTED on Plaintiff's § 1983 claims for negligence and deliberate indifference;

4. Plaintiff's § 1983 disciplinary claims against Defendants Barrett and Tarrance be DISMISSED without prejudice as they are not properly before the court at this time;

5. Plaintiff's state-law claims be DISMISSED without prejudice; and

6. Judgment be entered in favor of Defendants.

It is further ORDERED that **on or before August 7, 2018**, the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE on this 24th day of July, 2018.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE